EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JORGE LUIS GARCÍA, acusado y apelante.

*Número:* CR-77-11       *Resuelto:* 1ro. de noviembre de 1977

*Carmen Ana Rodríguez Maldonado,* abogada del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo.

SENTENCIA

Jorge Luis García fue acusado y declarado culpable del delito de violación, cometido el 16 de enero de 1973, en Coamo, Puerto Rico, contra la joven Maritza Santiago Rodríguez.[1]

---

[1] Le fue impuesta una pena de presidio de 1 a 5 años.

No conforme, argumenta dos errores. Nos limitaremos al primero por estimar que fue cometido.

La tesis del apelante descansa en que el testimonio de la tía de la perjudicada no constituye prueba válida y suficiente ya que las manifestaciones no fueron espontáneas ni hechas en la primera oportunidad posible, y sí al cabo de transcurridas varias horas de ocurrido el hecho delictivo.

De la exposición narrativa y transcripción de evidencia se desprende: que la perjudicada convino voluntariamente en salir a pasear con el apelante; que fueron a dar una vuelta por cerca del Motel Dayan en Juana Díaz, Puerto Rico, pero no entraron; siguieron dando vueltas por el pueblo de Juana Díaz, y luego de buscar unos libros se fueron para Villalba; que en el viaje hacia Villalba el acusado le dijo que usaba marihuana y le enseñó unos cigarrillos finitos pidiéndole que los fumara pero ella no aceptó; que después se dirigieron al pueblo de Coamo y el acusado le compró un jugo de china en una pizzería y después de tomárselo empezó a sentirse mareada y con dolor de cabeza; que al llegar a un puente que va para el pueblo de Aibonito, empezó a besarla y acariciarla, le quitó los panties, le alzó la falda, él se bajó el *zipper* del pantalón y tuvo relaciones sexuales con ella; que mientras el acusado sostenía relaciones con ella, lo empujaba pero como se sentía cansada y mareada no podía hacer nada; que no gritó porque era un sitio solo y no veía casas; que después la llevó a la residencia donde vivían consensualmente como marido y mujer Gilberto Rodríguez, primo del acusado y Mirta Maldonado; que el acusado se fue y regresó como a las 10:00 de la noche y durante ese tiempo no le contó nada a dicha pareja, porque no tenía confianza en ellos; que mientras estaba en dicha casa llegaron dos tíos de ella a buscarla y la llevaron a casa de sus padres; que al llegar abrazó primero a su madre quien la estaba esperando en unión a su esposo y otros familiares; que en el trayecto hacia su casa no contó nada de lo sucedido a sus tíos y al llegar tampoco a sus padres

por no estimarlo conveniente y estar nerviosa; que fue a preguntas de su tía que lo explicó.

A la luz de la versión de la perjudicada, no queda satisfecha plenamente la conciencia del juzgador respecto a la credibilidad de las manifestaciones suyas a través de su tía. Están carentes los requisitos de espontaneidad y primera oportunidad exigidos por la doctrina de *res gestae* según expuesta en *Pueblo* v. *De Jesús Cruz*, 94 D.P.R. 180 (1967), *Pueblo* v. *Pérez Morales*, 94 D.P.R. 609 (1967) y *Pueblo* v. *Cortés del Castillo*, 86 D.P.R. 220 (1962). Si bien reconocemos que ambos requisitos no son automáticamente precisables en cuanto al factor tiempo, y por ende es comprensible que la perjudicada se abstuviera de explicar lo acontecido al primo del acusado y su esposa—por no merecerles confianza y ser extraños—tal renuencia no se justificó respecto a los tíos que fueron a buscarla y, una vez en su casa, a sus padres. El factor tiempo unido al criterio "de conveniencia" que ella adujo para omitir explicaciones a sus parientes cercanos, resulta incompatible con su estado de nerviosidad. La medida de "garantía circunstancial de veracidad" que nutre la doctrina de *res gestae* justificada por la espontaneidad y sinceridad a sensaciones y percepciones reales producto de reacciones naturales a situaciones externas no concurren en el caso de autos.

Se revoca la sentencia.

Así lo pronunció y manda el Tribunal y certifica el Secretario.

El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Díaz Cruz disintió con opinión, a la cual se une el Juez Asociado Señor Martín.

(Fdo.) Ernesto L. Chiesa
*Secretario*

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz a la que se une el Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 30 de noviembre de 1977

Disiento de esta sentencia que margina el veredicto del jurado y absuelve a un convicto de violación. De autos surge que la perjudicada es una estudiante de 14 años a quien el acusado saca de la escuela para un paseo en automóvil. No hay prueba de que mediara una relación amorosa entre ellos. Sí hay un intenso indicio de que enervó la voluntad de la niña con un vaso de refresco "arreglado".[1] Primero le ofrece un cigarrillo de marihuana que tiene un conocido efecto relajante y enervante y cuando ella lo rechaza se detiene en una pizzería donde le compró un jugo de china *preparado*, no de botella (T.E. pág. 9, Líneas 13–17); ella no tarda en sentirse mareada y con dolor de cabeza y él aprovechó para gozar su virginidad mientras ella "lo empujaba pero como se sentía cansada y mareada, no podía hacer nada"; ni siquiera gritar porque el sitio era despoblado. (E.N.P. pág. 2.)

El acusado no declaró; eligió no negar lo declarado por la menor, a pesar de que presentó una testigo de defensa quien dijo que la joven se veía tranquila cuando después de desflorarla él la dejó por unas horas en su casa.

El apelante pretende anular el veredicto del jurado a cuya justicia se sometió, impugnando la suficiencia de la corroboración. Busca en apelación la credibilidad que le negaron sus pares. Aparte del total desprestigio y de la endeblez constitu-

---

[1] Uno de los más antiguos medios de vencer la resistencia de la mujer deseada es la solución en la bebida que se le ofrece de elementos depresivos o afrodisíacos. Al efecto disponía el Art. 255 del Código Penal vigente cuando se cometió el delito: "Se comete violación . . . . 3. Si [la mujer] estuviere impedida de oponer resistencia . . . por efecto de cualquier narcótico o anestésico, administrado por el reo, o con conocimiento de éste."

cional de la exigencia de corroboración del testimonio de la ofendida, la alegación del acusado no cualificaría ni en la época de oro del tecnicismo. Cuando llega a su hogar la ofendida le narra el abuso de que fue objeto a una tía que allí estaba con sus padres. Tiene de ingenuo y artificioso a la vez negar espontaneidad a estas manifestaciones porque no habló de su desgracia antes a los tíos que fueron a buscarla donde la dejó el acusado. A una estudiante de 14 años que acaba de tener su primera experiencia sexual sin haber consentido a ello, perturbada emocionalmente, agravada su condición por la bebida ingerida, no puede exigírsele que salga de los brazos de su raptor, propalando su infortunio como una grabadora que repite la cinta, a todos los que encuentre en su camino. Cuando todavía la jurisprudencia mostraba una insensibilidad discriminatoria contra la mujer violada, y el tecnicismo abortaba la justicia, este Tribunal resolvió: ". . . [p]arece ser la mejor norma al considerar la admisión de manifestaciones como la aquí envuelta, que cada caso se considere por sus méritos intrínsecos, siendo deber de todo juez ejercer una informada y cuidadosa discreción al determinar si los hechos y circunstancias presentes justifican la admisión de la evidencia." *Pueblo* v. *Cortés del Castillo*, 86 D.P.R. 220, 230 (1962) ; y "Es bien sabido que aunque el tiempo transcurrido entre los hechos y las manifestaciones de la persona perjudicada es un elemento de los que son considerados en estos casos para admitir esas manifestaciones como parte del *res gestae*, sin embargo, también es cierto que ese factor tiempo no es por sí solo determinante de si unas manifestaciones de esa naturaleza son admisibles o no. La extensión del tiempo que ha de determinar si las manifestaciones son admisibles o no dependerá de las circunstancias de cada caso." *Pueblo* v. *Pérez Morales*, 94 D.P.R. 609, 612 (1967).

La sentencia debió confirmarse. Toda vez que el acusado se hallaba inmerecidamente bajo fianza en apelación desde el día 13 de agosto de 1973, fecha en que se le sentenció a la

pena de 1 a 5 años de presidio, apareciendo que la demora de más de 4 años es imputable al sistema y ante la posibilidad de que después de su convicción haya el acusado observado una conducta correcta, el expediente debió devolverse a instancia con instrucciones de que siguiendo un procedimiento similar al dispuesto en la Regla 162.1 de Procedimiento Criminal se fijara la situación actual del acusado, y de haber méritos se procediera en bien de la justicia como lo autoriza la Regla 185 (a) de Procedimiento Criminal.